**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rashied L. SPRINGS, Defendant–
Appellant.**

**No. 93–1306.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1993.

Decided Feb. 16, 1994.

James A. Shapiro, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Crim. Div. and Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Audrey Filipowicz (argued), Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and LAY * and EASTERBROOK, Circuit Judges.

LAY, Circuit Judge.

Rashied Springs was arrested and charged with robbing the American National Bank in Waukegan, Illinois, on April 1, 1992, in violation of 18 U.S.C. § 2113(a), (d) (1988). After his arrest, Springs confessed to the crime, first to the Waukegan police and then to the F.B.I. Approximately seven weeks later, he moved to have his arrest quashed and his confessions suppressed. When the district court denied these motions, Springs entered a conditional plea of guilty pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving his right to appeal the denial of his suppression motions.[1] Springs now appeals. We affirm.

### I. The Arrest

 Springs initially claims the police lacked probable cause to arrest him. Our review of the record shows otherwise.

Shortly after the American National Bank in Waukegan was robbed, the Lake County Crime Stoppers, an anonymous crime "tip" line, received information that the person who had committed the bank robbery was named "Rashied" "McGee" or "McKay," that he was driving a small maroon four-door car, and that he was staying at a particular address in Waukegan. Crime Stoppers reported this information to the Waukegan police, who then set up surveillance at the given address. When a maroon four-door Ford backed out of the driveway of that address, carrying the driver and one passenger, Police Detective Richard Davis followed it, and as the car parked in front of a Western Union office, he parked behind it, blocking the car in. When the passenger emerged, the officer immediately recognized him as the same person shown in photographs taken by the bank's surveillance camera. Davis stopped Springs, identified himself, and told Springs the car in which he was riding was suspected of being involved in a criminal offense. He then asked both the driver and passenger of the car for identification. That is when the officer learned that the passenger was "Rashied," and that the driver was Rashied's aunt, Rhoda "McGee," the two names mentioned in the Crime Stoppers tips. The officer also recalled that the bank surveillance photos indicated that a four-door Ford of similar model was present in the bank parking lot at the time of the robbery. At that point, Detective Davis's back-ups arrived, and Davis asked Springs to accompany them to the police station.

* Hon. Donald P. Lay of the Eighth Circuit, sitting by designation.

1. On January 13, 1993, the district court sentenced Springs as a career offender to 210 months imprisonment, to be followed by five years of supervised release.

The facts and circumstances known to Detective Davis warranted a reasonable belief that Rashied Springs had been involved in the robbery of the American National Bank. The anonymous tips, the photographic record that the car had possibly been in the parking lot at the time of the robbery, and, most importantly, Detective Davis's recognition of Springs' face from the surveillance photographs are together sufficient to create a "totality of the circumstances" validating a warrantless arrest. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *cf. United States v. Holzman,* 871 F.2d 1496, 1503 n. 2 (9th Cir. 1989) (noting that identification from a surveillance photograph provides probable cause to arrest a suspected bank robber); *United States v. Hayes,* 553 F.2d 824, 826 (2d Cir.) (same), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977). "Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense had been committed." *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir.) (quoting *Hughes v. Meyer,* 880 F.2d 967, 969 (7th Cir.), *cert. denied,* 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1989)), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992). We conclude that the police had probable cause to make the arrest.

## II. The Confessions

Springs urges that his confessions to the Waukegan police and the F.B.I. should have been suppressed because they were induced by a series of promises and misrepresentations by the police officers. Springs also claims that his statements should have been suppressed because they were "plea-related discussions," inadmissible pursuant to Federal Rule of Criminal Procedure 11(e)(6). We consider these arguments in turn.

 It is fundamental that a confession, to be admissible, must be voluntary under a totality of the circumstances, *Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Holland v. McGinnis,* 963 F.2d 1044, 1050 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993), and that in assessing the circumstances, courts must consider any promises or misrepresentations made by the interrogating officers, *see id.* at 1051–52; *United States v. McGuire,* 957 F.2d 310, 315 (7th Cir.1992); *see also Arizona v. Fulminante,* 499 U.S. 279, 285–88, 111 S.Ct. 1246, 1251–53, 113 L.Ed.2d 302 (1991). Here, Springs contends that Officer Yarc, who conducted his interrogation after Springs had waived his *Miranda* rights, told him among other things that if he confessed, he would do only "state time" and not "federal time," and that he would serve only two years in jail instead of the seven or eight he could serve if he did not confess. Springs further asserts that the officer told him that if he refused to confess, the police would obtain a search warrant for his grandmother's house and "tear it up," and that his aunt, Rhoda McGee, would be arrested and charged as an accomplice in the bank robbery. Officer Yarc denied making any of these representations. The district court explicitly resolved this credibility conflict in favor of Officer Yarc.

 When reviewing a motion to suppress, we must accept the factual findings of the district court unless they are clearly erroneous. *United States v. Chrismon,* 965 F.2d 1465, 1470 (7th Cir.1992). This standard is especially deferential to the credibility determinations of a district judge who has conducted a suppression hearing, heard the conflicting testimony, observed the witnesses, and then reached a determination about whom to believe. *Id.* (citing *United States v. Haddon,* 927 F.2d 942, 945 (7th Cir.1991)). Springs has presented no evidence or argument that would lead us to disturb the district court's findings. We thus affirm the district court's determinations that the officers apprised Springs of his rights and made no impermissible promises to him in order to elicit his confession, and we conclude that therefore, Springs' confession was voluntary.[2]

**2.** This conclusion moots Springs' argument that the subsequent confession to the F.B.I., which was given hours after Springs confessed to the

Waukegan police, was inadmissible because of the taint of official misconduct surrounding the initial confession. We see no evidence of any

■ Springs' alternate argument, that the confessions were "plea-related" discussions, is based on a misreading of Rule 11(e)(6). Federal Rule of Criminal Procedure 11(e)(6) states in pertinent part that evidence of "any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is inadmissible. The phrase "with an attorney for the government" was added to the rule in 1979 precisely to prevent the interpretation urged by Springs, that "an otherwise voluntary admission to law enforcement officials is rendered inadmissible merely because it was made in the hope of obtaining leniency by a plea." Fed. R.Crim.P. 11(e)(6) advisory committee's note (1979 amendment); *accord United States v. Keith,* 764 F.2d 263, 265 (5th Cir.1985). The record shows that Springs asked the interrogating officers about the effects of cooperation and voluntarily confessed to them. Such statements made to police officers, not an "attorney for the government," in the spirit of cooperation and with the hope for leniency, are clearly not inadmissible under Rule 11(e)(6). *See id.; United States v. Ceballos,* 706 F.2d 1198, 1203 (11th Cir.1983).

### III. The Sentence

Finally, Springs contends that the district court erred in sentencing him as a "career offender" under the Sentencing Guidelines, and that the "acceptance of responsibility" Guideline is unconstitutional as applied to him.[3] We disagree.

■ The Sentencing Guidelines state that a defendant must be sentenced as a career offender if:

(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. In this case, each of the above elements is present. At the time of the bank robbery, Springs was twenty-three years old. Armed bank robbery is a crime of violence. *See* U.S.S.G. § 4B1.2.(1). And despite Springs' contentions to the contrary, we find that he had at least two prior felony convictions for controlled substance offenses.

■ In March, 1989, when Springs was twenty years old, he was arrested for selling two rocks of crack cocaine. He was arrested again in June, 1989, after he threw three grams of crack cocaine out of a car window when the car was being stopped for a traffic violation. After convictions for both offenses,[4] the two cases were consolidated for sentencing. The district court counted the two cases as separate convictions in determining Springs' career offender status. Springs urges that the court should have treated them as "related cases" and thus, pursuant to U.S.S.G. § 4B1.2.(3), counted them as only one prior conviction. We disagree.

The Commentary to U.S.S.G. § 4A1.2, which § 4B1.2.(3) incorporates through a series of cross-references for the definition of "related cases," specifically states that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense)."[5] The signifi-

---

"taint," and thus no reason to question the voluntariness of the F.B.I. confession.

3. Springs also argues that the court should have granted a downward departure from the Guidelines because his criminal history score significantly over-represents the seriousness of his criminal history. Because the record shows that the question of downward departure was brought to the district court's attention and indicates that the court recognized its authority to depart, we are without jurisdiction to consider this claim. *See, e.g., United States v. Berkowitz,*

927 F.2d 1376, 1391 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).

4. For the first offense, Springs was convicted of transport/sale of a controlled substance. For the second, he was convicted of possession of a controlled substance for sale.

5. This "intervening arrest" language was added to the Commentary in November, 1991. There is thus no potential *ex post facto* problem here, because the amendment was in effect at the time of the offense in April, 1992. *See United States v. Harris,* 994 F.2d 412, 416 n. 9 (7th Cir.1993)

cance of an intervening arrest may be that "an offender who has been arrested between his first and second offenses has perhaps demonstrated, more than one who has had no intervening arrest, that he is unlikely to mend his ways." *United States v. Butler,* 970 F.2d 1017, 1025 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992). In any event, the Commentary is clear and binding. *Stinson v. United States,* — U.S. —, — – —, 113 S.Ct. 1913, 1917–20, 123 L.Ed.2d 598 (1993). Springs was arrested for the first drug-dealing offense before he committed the second. The Guidelines therefore require that the prior offenses be treated as separate. *See United States v. Woods,* 976 F.2d 1096, 1102 (7th Cir.1992) (stating that "if the criminal conduct is separated by arrests, the ensuing convictions are never considered related even if consolidated for trial or sentencing").

■ Springs' final contention, that the "acceptance of responsibility" Guideline is unconstitutional as applied to his case, is as meritless as it is curious. Springs argues that his Fifth Amendment rights were violated when he "accepted responsibility" for all his past relevant criminal conduct pursuant to U.S.S.G. § 3E1.1. As a result of his admissions, the government at sentencing raised issues regarding Springs' previous beating of his wife and the conditional nature of his guilty plea. Our review of the record shows that the court sustained Springs' objection to the statements about his prior beating of his wife. Moreover, despite the conditional nature of his guilty plea, we note that the court granted Springs the maximum, three-level reduction for his acceptance of responsibility, and then sentenced him to a term of imprisonment in the lower half of the resulting sentencing range.

We have previously rejected claims that a denial of acceptance-of-responsibility reductions constitutes a penalty for the exercise of Fifth Amendment rights. *United States v. Cojab,* 978 F.2d 341, 343 (7th Cir.1992). In

the present case, the defendant was able to retain the right to challenge the voluntariness of his confessions, and he still received the maximum possible acceptance-of-responsibility reduction. Under these circumstances, it is difficult to see how Springs was in any way penalized for exercising his Fifth Amendment rights.

### CONCLUSION

For the foregoing reasons, the conviction and sentence of Rashied Springs are affirmed.

---

(noting that other circuits and our general practice holds that courts may not apply Guidelines provisions not in effect on the date of the offense, if the new provision operates to the detriment of the defendant). Pursuant to 18 U.S.C.

§ 3553(a)(4) (1988), courts are to apply the Guidelines and policy statements that are in effect on the date of sentencing. *Id.* Consequently, since Springs was sentenced in January, 1993, the amended language applies.