UNITED STATES of America, Plaintiff,

v.

John MEBUST, Defendant.

No. 93 CR 436.

United States District Court,
N.D. of Illinois,
Eastern Division.

March 28, 1994.

David S. Mejia, Oak Park, IL, David W. Gleicher, John M. Beal, Frank A. Rodriguez, Chicago, IL, for plaintiff.

Brenda M. Atkinson, U.S. Attys. Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Court.

Defendant John Earl Mebust ("Mebust") is charged with illegally possessing firearms in violation of 18 U.S.C. §§ 922(a)(6), 922(g)(1), 922(k), and 922(o ). This matter is before the court on the parties pretrial motions.

### Background

In October 1992, Special Agent Edward Diamond ("Agent Diamond") of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), received information from Richard Dixon that defendant had stolen his Firearm Owner's Identification Card ("FOID card") and was using it to illegally purchase weapons. On February 1, 1993, Mebust spoke with Agent Diamond at defendant's home. During that interview, Mebust stated that he knew a Richard Dixon, and that he purchased firearms with Richard Dixon's FOID card. However, defendant stated that he no longer had the firearms, and that he would call around to his friends to locate them. The interview was continued on February 2, 1993, when Mebust and his previous lawyer, Steven Decker, met with Agent Diamond and Special Agent Joe Ruzevich ("Agent Ruzevich") at the ATF offices.

After this meeting, a cooperating individual ("CI") informed law enforcement officers that defendant used certain storage lockers at Safeway Storage in Round Lake Heights, Illinois to store machine guns, silencers, and illegal drugs. On June 18, 1993, ATF agents accompanied state police officers in the execution of a search warrant for storage lockers 311 and 501 at Safeway Storage.

Locker 311 contained numerous firearms,

related paraphernalia,[1] and the lease to locker 501.[2] Also, 10 of the weapons found in locker 311 were purchased with the Dixon FOID card.

Locker 501 included books on firearms; an FOID card in the name of Albert Johnson with defendant's picture; an Albert Johnson social security card, registration card, and parking ticket; two photo albums containing pictures of Mebust, his check book and passport.

On August 4, 1993, the government filed a three count indictment against Mebust for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1), possessing firearms with obliterated or altered serial numbers in violation of 18 U.S.C. § 922(k), and possessing machine guns in violation of 18 U.S.C. § 922(o). On December 16, 1993, the government filed a superseding indictment which added four additional counts under 18 U.S.C. § 922(a)(6), for making false statements to a licensed firearms dealer.

### Pretrial Motions

### I. Defendant's Motions

Defendant moves (1) for relief from prejudicial joinder of counts, (2) to dismiss counts four and six, (3) to dismiss for vindictive prosecution, (4) to produce agents' notes, (5) to bar use of defendant's statement, (6) to

---

**1.** This locker contained approximately 27 rifles, 10 shot guns, 50 hand guns, 15 semi-automatic weapons which had been converted into machine guns, 10 silencers without serial numbers, 3 hand grenades without serial numbers, 3 conversion kits for AR–15 firearms, 12,000 rounds of ammunition, a box of magazines and clips addressed to defendant, 5 booby traps, 3 grenades, one bottle of Isotol (a cocaine cutting agent), 10 scales, and material used to manufacture grenades.

**2.** The lease to locker 311 was found in a search of defendant's Jeep. Neither lease was in defendant's name. The CI claimed that Mebust told him to lease both lockers under an alias.

**3.** Rule 14 provides in pertinent part: "If it appears that a defendant or the government is prejudiced by a joinder of offenses ... in an indictment ... or by such joinder for trial together, the court may order ... separate trials of counts." Fed.R.Crim.P. 14.

dismiss the superseding indictment (7) to bar "other crimes or other acts" evidence, (8) for supplemental *Brady* production, and (9) to bar use of tape-recorded conversations. The court addresses each motion in turn.

### A. *Prejudicial Joinder*

■ Mebust moves for an order pursuant to Federal Rule of Criminal Procedure ("Rule") 14[3] that Count One of the Superseding Indictment be severed from Counts Two and Three on the grounds of prejudicial joinder. Mebust claims that he will be severely prejudiced at trial because under Count One, the jury will learn about his 20 year old conviction, which would be inadmissible in a separate trial of Counts Two and Three. Thus, Mebust fears that he will be found guilty of Counts Two and Three based upon the "prejudicial and irrelevant proof" of his 20 year old conviction. (Pretrial Motion for Relief from Prejudicial Joinder at 4).

Count One charges that on June 18, 1993, Mebust was a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1).[4] In Counts Two and Three, he is charged with possessing firearms with obliterated serial numbers in violation of 18 U.S.C. § 922(k),[5] and possessing machine guns in violation of 18 U.S.C. § 922(o)[6] on that same day. Counts One through Three are closely relat-

---

**4.** Section 922(g)(1) provides that "[i]t shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition...." 18 U.S.C. § 922(g)(1). Defendant is not entitled to possess firearms because he was convicted of armed robbery in 1974.

**5.** Section 922(k) makes it unlawful "to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(k).

**6.** Section 922(o)(1) provides that "[e]xcept as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1).

ed.[7] In Count One, Mebust is charged with being in possession of all of the weapons found in the storage locker, which include the very weapons which are identified in Counts Two and Three. Moreover, since all of the weapons were found in locker 311, the government must prove that Mebust actually or constructively possessed the storage lockers to obtain a conviction on any of the three counts. Therefore, contrary to defendant's assertion, he is requesting two separate trials consisting of essentially the same evidence.

Furthermore, it is not clear that defendant will be prejudiced by trying these counts together. As the government correctly notes, several options are available to cure any prejudice. Specifically, (1) the fact of defendant's conviction could be introduced by a stipulation, (2) the court can give limiting instructions emphasizing that the jury must give separate consideration to each count of the indictment, and (3) more specifically, the jury could be instructed to only consider the prior conviction as it relates to Count One. These proposals are more than adequate to counter any prejudice, and are certainly preferable to squandering judicial resources by having two almost identical trials. *See United States v. Balzano,* 916 F.2d 1273, 1280–82 (7th Cir.1990) (sanctioning the use of limiting instructions and noting that the trial court is in the best position to balance the costs of separate trials against possible prejudice to the defendant). Consequently, defendant's request to sever Count One from Counts Two and Three is denied.

■ Defendant also moves that Counts Four through Seven be severed from the first three counts due to improper joinder of different charges under Rule 8(a).[8] Mebust contends that these counts should be severed because they are not part of the same transaction or occurrence. The court disagrees.

Counts Four through Seven charge that on separate occasions from December 21, 1991, to January 23, 1993, Mebust made false statements to firearms dealers in violation of 18 U.S.C. § 922(a)(6),[9] in order to obtain firearms. Significantly, the government notes that all but one of the numerous firearms listed in these counts were recovered in locker 311 on June 18, 1993. The government claims that the acquisition and possession of the weapons are "inextricably intertwined concepts." (Government's Consolidated Response ("Response") at 9). The government also contends that joining all of these counts presents the whole scheme which involved acquiring and possessing firearms in violation of the law.

Based upon these representations, Counts Four through Seven concerning the false statements, are properly joined with Counts One through Three, the possession counts, because these events are "based on the same act or transaction" within the meaning of Rule 8(a). *See United States v. Berardi,* 675 F.2d 894, 899 (7th Cir.1982) (explaining that "transaction" is a flexible concept which "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship"). The court is also persuaded that were the counts severed, the separate trials would both require evidence of defendant's purchase and possession of the guns. (*See* Response at 10). Accordingly, defendant's motion and amended motion for relief from prejudicial joinder are both denied.

---

7. Defendant concedes that these counts are properly joined under Rule 8(a) because they are "based on the same act or transaction." *See* Fed.R.Crim.P. 8(a), and discussion of Counts Four through Seven *infra.*

8. Rule 8(a) states: "Two or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a).

9. Section 922(a)(6) makes it a crime "for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from ... a licensed dealer ... knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale...." 18 U.S.C. § 922(a)(6).

### B. Dismissal of Counts Four and Six

■ Mebust contends that Counts Four and Six should be dismissed because "[i]ndictments charging two or more offenses in a single count are duplicitous." (Motion to Dismiss Counts Four and Six at 1). Specifically, defendant asserts that Count Four, a false statement count, should be pleaded in nine separate counts because it lists nine violations of 18 U.S.C. § 922(a)(6).[10] Likewise, defendant argues that Count Six, another false statement count, erroneously contains two separate and distinct violations of 18 U.S.C. § 922(a)(6) in a single count.

■ "A duplicitous count is one that charges more than one distinct and separate offense." Berardi, 675 F.2d at 897. However, a count is not duplicitous if it merely charges the commission of a single offense by different means. Id. Since this line is sometimes difficult to draw, the initial decision is left to the discretion of the prosecutor. Id. at 898.

Here, Count Four charges that from December 21, 1991, through July 2, 1992, Mebust falsely identified himself as Richard Dixon, and denied having a conviction for a felony on ATF Form 4473 in order to purchase guns from R Guns, in Carpentersville, Illinois. This count then lists the nine firearms which were bought. Similarly, Count Six charges that from January 1992 to May 1992, defendant made the same false statements on ATF Form 4473 in order to purchase guns from Dave's Guns, in Hampton, Illinois, and lists the two guns purchased. The government explains that "[t]he acts are divided by gun dealer. The lies were identical in each case and for each gun." (Response at 22).

After reviewing the superseding indictment, the court finds that the government made a reasonable decision to characterize the acts in Counts Four and Six as two separate offenses since the purchases were made from two separate gun dealers, and such characterization is not prejudicially duplicitous. In reaching this decision, the court notes that Mebust is adequately notified of the charges against him, he may not be tried again for these same false statements after a verdict is reached in this trial, and any evidentiary ruling applying to the purchase of one gun would apply to all. See Berardi, 675 F.2d at 899 (noting the dangers of a duplicitous count). Also, as the government points out, the court can ensure a unanimous verdict by instructing the jury that it "must be unanimous in … finding that the defendant did at least one of the acts charged…." Id. (quoting jury instruction given by the trial court). Therefore, defendant's motion to dismiss Counts Four and Six is denied.

### C. Dismissal Based upon Vindictive Prosecution

■ Mebust brings this pro se motion[11] to dismiss the last four counts of his indictment charging him with violations of 18 U.S.C. § 922(a)(6). Defendant claims that the December 14, 1993, superseding indictment containing the additional charges was sought in retaliation for his decision not to plead guilty on December 7, 1993. The court rejects this claim.

■ "A prosecution is vindictive and a Fifth Amendment due process violation if it is undertaken in retaliation for the exercise of a legally protected statutory or constitutional right." United States v. Dickerson, 975 F.2d 1245, 1251 (7th Cir.1992). A presumption of vindictiveness does arise when the prosecutor brings a superseding indictment with increased charges after the defendant has been tried once and exercises his right to a trial de novo. Blackledge v. Perry, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102–03, 40 L.Ed.2d 628 (1974).[12] However, as the gov-

---

10. The government concedes that Count Four incorrectly states that defendant purchased "ten" guns when he actually purchased "nine." (Response at 20 n. 7).

11. Defendant's counsel declined to file this motion on behalf of his client. However, the court allowed Mebust to file it pro se for the record.

12. In Blackledge, the prosecutor filed felony charges for assault with a deadly weapon with intent to kill against the defendant after the defendant exercised his right to appeal his conviction for the misdemeanor of assault with a deadly weapon. 417 U.S. at 22–23, 94 S.Ct. at 2099–2100.

ernment correctly notes, this presumption does not apply in the pretrial setting because the prosecutor has broad discretion in charging a defendant. *United States v. Goodwin,* 457 U.S. 368, 382, 102 S.Ct. 2485, 2493, 73 L.Ed.2d 74 (1982). Therefore, to show prosecutorial vindictiveness, Mebust has the burden of proving that his prosecution was motivated by actual vindictiveness. *See Dickerson,* 975 F.2d at 1251. "To prove actual vindictiveness, there must be objective evidence of some kind of genuine prosecutorial animus." *Id.*

Such is not the case here. Despite defendant's assertion to the contrary, there is no evidence that the additional charges were brought because the prosecutor wanted to persuade him to plead guilty. Nor is there any evidence that the charges were brought because the prosecutor wanted to engage in self-vindication. *See id.* Mebust's reliance on the timing of the superseding indictment is insufficient. Defendant's unsupported allegation that the government possessed all necessary information six months before it brought the superseding indictment is also insufficient to permit an inference of actual vindictiveness. Consequently, defendant's *pro se* motion to dismiss for vindictive prosecution is denied.

### D. *Production of Agents' Notes*

 Mebust made an oral motion requesting the production of the agents' notes taken during the interview of the defendant and his previous attorney, Steven Decker. In his reply brief, defendant emphasizes that the government now seeks to use previously undisclosed statements that Mebust and Decker allegedly made to agents, and that this crucial information is subject to discovery. The government represents that defendant has already received the final, typed agents' reports concerning this interview. Moreover, the government contends that although these agents' notes have been retained, these handwritten notes are not dis-

coverable under the Jencks Act, 18 U.S.C. § 3500.

Rule 16(a)(1) states in relevant part:

Upon request of a defendant the government shall disclose to the defendant and make available for inspection ... that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent....

Fed.R.Crim.P. 16(a)(1)(A). However, oral statements made by a defendant which are later memorialized by a government agent, are not discoverable under Rule 16. *See In re United States,* 834 F.2d 283, 285–86 (2d Cir.1987); *United States v. Hoffman,* 794 F.2d 1429, 1433 (9th Cir.1986); *United States v. Callahan,* 534 F.2d 763, 765 (7th Cir.1976). Such witness statements fall under § 3500 which provides that "no statement or report in the possession of the United States which was made by a government or potential government witness ... shall be the subject of ... discovery ... until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Clearly, under § 3500, Mebust is not entitled to the agents' notes until after they have testified on direct examination. Therefore, the court will not order the government to turn over the handwritten notes to defendant.

However, the government must submit the handwritten reports for *in camera* inspection so the court can determine whether any additional *Giglio* or *Brady* materials should be disclosed.[13]

### E. *Government's Use of Defendant's Statements*

On February 8, 1994, the government notified the defense of previously undisclosed statements which were allegedly made by Mebust and Decker during the February 2, 1993 interview. The government represents

---

**13.** In both *United States v. Batchelder,* 581 F.2d 626, 635 (7th Cir.1978), *rev'd on other grounds,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) and *United States v. Bastanipour,* 697 F.2d 170, 174–75 (7th Cir.1982), which the government cites, the agents' handwritten notes had

been destroyed and the Seventh Circuit held that these notes need not have been retained after being typed. These holdings were based on the premise that the typed copies which were disclosed contained all of the information contained in the handwritten materials.

that Agent Ruzevich's two-page report (which is date July 15, 1993) was inadvertently omitted from the previously disclosed draft case report prepared by Agent Diamond. In general, Mebust moves to bar these alleged statements because the government's failure to disclose them violated Rule 16, and Fed.R.Evid. 410 [14] and Fed.R.Crim.P. 11 precluding the admission of statements made during plea negotiations.

As noted in the preceding section, Rule 16 is not applicable here because defendant's alleged statements were incorporated in written witness statements which are subject to disclosure only under the Jencks Act. Thus, Rule 16 has not been violated.

Moreover, Rule 11(e)(6) precludes the use of "any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Fed.R.Crim.P. 11(e)(6)(D). As the government correctly notes, the language of Rule 11 presumes that a government attorney is present during the plea negotiations.

Mebust contends that the alleged statements should still be barred because Assistant United States Attorney ("AUSA") Brenda Atkinson's reliance on the fact that she was not present "is hypertechnical if not disingenuous in avoiding the plain fact that on [February 2, 1993] Agent Diamond was conducting ... plea negotiations under her direct supervision, control and authority." (Reply to Govt's Response to Def.'s Motion to Bar Use of Def.'s Statement at 2). Specifically, Mebust claims that when Mebust and Decker first arrived at the ATF office, "Agent Diamond immediately informed them that since Mr. Mebust was represented by counsel that Diamond was contacting [AUSA] Brenda Atkinson, as no agreement

nor disposition would be reached without her authority and approval." (*Id.* at 1). Also, while Decker and Mebust were conferring on "Agent Diamond's request for cooperation and assistance, Diamond told them he was calling the U.S. Attorney's Office." [15] (*Id.*) In addition, on February 12, 1993, Decker and AUSA Atkinson allegedly told Mebust's newly retained lawyer, David Mejia, that a plea bargain had been discussed in reference to the meeting on February 2, 1993. (*Id.* at 2).

Recently, in *United States v. Springs,* 17 F.3d 192 (7th Cir.1994), the Seventh Circuit noted that the phrase "with an attorney for the government" was added to the text of Rule 11 to prevent the interpretation that "an otherwise voluntary admission to law enforcement officials is rendered inadmissible merely because it was made in the hope of obtaining leniency by a plea." *Id.* at 195 (quoting Fed.R.Crim.P. 11(e)(6) Advisory Committee's Note (1979 amendment)). The court then concluded that the "record show[ed] that Springs asked the interrogating officers about the effects of cooperation and voluntarily confessed to them." *Id.*

In the instant case, it is not clear that Mebust "voluntarily" made incriminating statements. Defendant claims that he acted in reliance upon Agent Diamond's assurances that the U.S. Attorney's Office had given him authority to engage in plea negotiations. Mebust also insists that the government was aware of the February 2, 1993 meeting, and later referred to the conversation that took place as "plea discussions." The government rejects these contentions,[16] but the court cannot resolve this issue without the benefit of a hearing. *See* Advisory Committee's Note to Fed.R.Crim.P. 11(e)(6), 1979 Amendment (the addition of the language "with an attorney for the government" "does not compel

---

14. Rule 410 provides that "any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure" is not admissible against the defendant who made the plea or participated in the plea discussions. Fed.R.Evid. 410.

15. Mebust also insists that although Atkinson was not in her office, "[c]ontact with an Assistant U.S. Attorney ... had been established." (*Id.* at 3). Also, defendant claims that he and Decker

relied on the fact that the U.S. Attorney's Office was involved in the negotiations. (*Id.*)

16. In its motion *in limine* concerning these statements, the government also contends that Decker's comments should be admitted as an admission under Fed.R.Evid. 801(d)(2)(D). Although a defendant may be bound by his attorney's tactical errors and admissions, it is not clear that Decker volunteered the incriminating information as the government insists.

the conclusion that statements made to law enforcement agents, especially when the agents purport to have authority to bargain, are inevitably admissible."). Therefore, defendant is granted a hearing on this issue.

### F. Dismissal of the Superseding Indictment

■ Mebust moves to have his superseding indictment dismissed under Rule 6(b)(2) on the grounds that it was "returned by a grand jury in which one or more of the array was legally unqualified to return a true bill of indictment." (Motion to Dismiss Superseding Indictment at 1). This allegation is premised upon the fact that Robert Girardi, a member of the grand jury that returned defendant's superseding indictment, was himself indicted on January 20, 1994.[17] Mebust asserts that based "on information received by the defendant it is believed that Robert Girardi is not the only juror in the empaneled Special October 1992–I Grand Jury under investigation" and requests a hearing where the government must show that the superseding indictment was returned by a "properly constituted" grand jury. (*Id.* at 2).

In support, Mebust attaches the indictment against Girardi and a brief by the defendant in *United States v. Wing*, No. 93 CR 523–3, a case pending before Judge Duff where the defendant challenged his indictment on the same grounds. The *Wing* motion includes an unsworn, handwritten statement by Richard Gelsomino ("Gelsomino"). Gelsomino, a grand jury target and lifelong friend of Girardi, met with him on several occasions and was allegedly told by Girardi that at least 3 other jurors could be bribed to sway the grand jury.[18] (*See* Attachment to Def.'s Reply to Govt's Response to Motion to Dismiss Superseding Indictment).

■ In general, "an indictment returned by a legally constituted nonbiased grand jury, ... if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment." *Lawn v. United States*, 355 U.S. 339, 349, 78 S.Ct. 311, 317, 2 L.Ed.2d 321 (1958). However, Rule 6(b)(2) provides:

> A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualification of an individual juror.... An indictment shall not be dismissed on the ground that one or more members of the grand jury were not legally qualified if it appears from the record ... that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment.

Fed.R.Crim.P. 6(b)(2). Although disclosure of secret grand jury proceedings may be made upon a showing that grounds may exist for a motion to dismiss, the party requesting disclosure must "show a 'particularized need' for the grand jury materials." *United States v. Peters*, 791 F.2d 1270, 1283 (7th Cir.1986) (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983)); *See also* Fed.R.Crim.P. 6(e). In general, "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and ... the burden of demonstrating this balance rests upon the private party seeking disclosure." *Sells Eng'g*, 463 U.S. at 443, 103 S.Ct. at 3148. Such a showing has not been made here.

In addressing this precise issue in *United States v. Coffey*, 854 F.Supp. 520, 522–23 (N.D.Ill.1994), Judge Plunkett recently held that "[t]he facts merely indicate that a single grand juror who had been a lifelong friend of a Defendant leaked information about the proceedings to that Defendant in violation of Rule 6(e)." After reviewing the govern-

---

**17.** Girardi was charged with contempt of court, bribery, and obstruction of justice arising from his unlawful disclosure of matters occurring before the Special October 1992–I Grand Jury which returned Mebust's indictment.

**18.** In the summer of 1993, Girardi began meeting with Gelsomino. At these meetings, Girardi allegedly discussed the grand jury proceedings involving Gelsomino and other persons. When

Gelsomino shared this information with his co-defendant, Richard Lantini, he felt it was a setup and told his attorney. Gelsomino eventually agreed to help the government catch Girardi by wearing a wire during subsequent meetings. (*See* Govt's Ex. 2, Attachment to Govt's Response; Attachment to Supplemental Information Relating to Def.'s Motion to Dismiss Superseding Indictment).

ment's *in camera* submissions, this court agrees. First, contrary to Gelsomino's un-sworn note, Girardi claimed that he never discussed selling grand jury information with any of the other grand jurors. In addition, each of the remaining grand jurors denied being approached by Girardi in this regard, and stated that Girardi did not take an active role or attempt to sway votes. Lastly, it appears that the leaked information did not involve the instant case at all. For these reasons, this court concludes that defendant has failed to make a particularized showing warranting a hearing or further inquiry into the grand jury materials. Therefore, defendant's motion to dismiss superseding indictment is denied.

### G. *Bar of "Other Acts or Other Crimes" Evidence*

■ The government seeks to introduce that Mebust (1) obtained two FOID cards (which expired in 1982 and 1988) by making false and fraudulent statements, (2) used the fraudulent FOID cards to purchase five weapons (one of which was recovered in locker 311), (3) attempted to sell an AK–47 rifle to an acquaintance in March or April 1993, but later converted it to a machine gun and returned it locker 311 where it was recovered during the June 18, 1993 search, (4) asked the CI to help him look for Richard Dixon to ensure that Dixon wouldn't testify about defendant's use of the Dixon FOID card. Mebust moves for an order to bar the government from introducing evidence regarding the fraudulent FOID cards and defendant's alleged purchase of five guns, and his alleged statements to the CI about trying to locate Dixon.[19] Defendant's motion is denied.

■ Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). Further such other crimes evidence is admissible if its probative value is not "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Thus, as the court noted in *United States v. Tylkowski*, 9 F.3d 1255, 1261 (7th Cir.1993):

Admission of "prior bad acts" is appropriate under Rule 404(b) and [Rule] 403 if "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury's finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."

(quoting *United States v. Zapata*, 871 F.2d 616, 620 (7th Cir.1989)). Such is the case here.

■ Contrary to defendant's contention, the admission of the proposed evidence concerning the FOID cards and guns would serve a purpose other than showing propensity. As the government notes, the evidence regarding Mebust's acquisition of the two previous FOID cards and firearms is probative of his intent to illegally purchase and possess firearms despite his prior felony conviction, which is relevant to all of the counts in the superseding indictment. This evidence is also relevant to show that defendant had the opportunity to illegally obtain firearms, and that his acquisition of such firearms was not made by mistake or accident.[20] Also, the fact that two of the weapons implicated by defendant's "prior bad acts" were recovered in locker 311 supports the court's

---

19. Mebust also objected to the government's reference to any drug paraphernalia found in the locker. However, the government has represented that it has no intention of eliciting such testimony. (Govt's Response to Def.'s Motion to Bar Statements at 1).

20. As the government correctly notes, Rule 404(b) does not require that defendant's trial defense be based upon mistake or lack of intent or knowledge before the government can introduce evidence probative of these issues. (*See* Govt's Response to Def.'s Motion in Limine at 1).

conclusion that the acts are close enough in time to be relevant to the charged acts. Further, the court is persuaded that defendant's attempt to locate Dixon [21] is relevant to whether he in fact, used the Dixon FOID card to illegally purchase the weapons which were recovered, and was trying to prevent the government from learning that he possessed these weapons.

Lastly, as the government points out, this similar other acts evidence is relevant and probative because the indictment charges defendant with the specific intent crimes of knowingly possessing illegal weapons, and knowingly making false statements. (*See* Govt's Amended Notice of Intention to introduce Evidence Pursuant to Rule 404(b) at 8; Govt's Response to Motion in Limine at 2). *See also United States v. Maholias,* 985 F.2d 869, 879 (7th Cir.1993) (noting that the government may submit Rule 404(b) evidence probative of intent because intent is necessarily in issue when it is a material element to be proved). Since the probative value of this other acts evidence is not substantially outweighed by the danger of unfair prejudice, defendant's motion to bar it is denied.

### H. *Supplemental Brady Motion*

■ On March 23, 1994, defense counsel produced a February 22, 1993 signed statement of the CI in which he said that he lied to two agents about not being able to identify Mebust in a photospread. Mebust moves for production of all written or oral reports and handwritten notes relating to the February 1993 interview of the CI in which the CI allegedly claimed that he could not identify Mebust. The government has not responded to this motion, although Mebust claims that the government represented that no agents' report or notes could be located concerning this interview.

Mebust's request for an order requiring disclosure of this report is granted. If the government possesses the agents' report of such interview with the CI, it must be disclosed immediately.

### I. *Tape–Recorded Conversations*

When this case was first set for trial in January 1994, Mebust moved to bar the government from using tape-recorded conversations of telephone calls made by defendant to his family and fiancee from the Metropolitan Correctional Center. Defendant has not renewed this motion, nor has the government responded to it.

At this point, it does not appear that these tapes are relevant to this case. Defendant's motion *in limine* to bar their use is granted unless the government provides sufficient basis for their admission.

### II. *Government's Motions*

The government moves to (1) reserve the right to introduce explosives, (2) preclude cross-examination of agent regarding an internal affairs investigation, (3) preclude mention of vulgarity jokingly used in agent's report, (4) preclude mention of the ATF assault on the Davidian Compound in Waco, Texas.[22] The court rules as follows with respect to these motions.

### A. *Right to Introduce Explosives*

The government asserts that it has no intent to introduce the evidence concerning the six hand grenades and three booby traps found in the lockers. However, if defendant attempts "to blame them on a government witness, the government reserves the right to introduce the explosives at trial." (Govt's Motion to Reserve Right to Introduce Explosives at 1).

Mebust did not respond to this motion. However, he has previously stated that his trial defense is not that he lacked intent or knowledge, but that the contents of locker 311 were the exclusive property of the CI. (*See* Motion in Limine at 2). Therefore, it is

---

**21.** The government contends that Mebust told the CI that he wanted to locate Dixon so that they could shoot him. However, the government seeks to only elicit testimony that Mebust was trying to locate Dixon just to persuade him not to speak to the government.

**22.** The court will address the government's motions to restrict cross-examination of the CI in a separate opinion to be issued today.

not entirely clear whether the explosives will be an issue or not.

Should this issue arise, the court will rule at that time.

### B. Cross–Examination of Agent on Internal Affairs Investigation

An internal affairs investigation was opened when defendant's fiancee, Cindy Murphy ("Murphy"), claimed that Agent Diamond showed her pictures of Mebust in compromising positions with a prostitute during his bachelor party. However, the investigation was closed because there was no evidence to corroborate Murphy's story, and she refused to make a statement under oath.

Federal Rule of Evidence 608(b) provides that specific instances of conduct, other than conviction of a crime, may not be proved by extrinsic evidence. However, in its discretion, the court may allow cross-examination if these instances of conduct are probative of truthfulness or untruthfulness. Fed.R.Evid. 608(b).

Here, as the government notes, the internal affairs investigation was closed, and the alleged conduct is not probative of truthfulness or untruthfulness. In addition, this allegation has the potential for causing undue prejudice. For these reasons, the government's motion to preclude cross-examination of agent regarding an internal affairs investigation is granted unless defendant provides a sufficient basis for admitting this line of cross-examination.

### C. Mention of Vulgarity

In a report, Agent Ruzevich parenthetically referred to Agent Diamond as a "useless piece of shit." The government moves to preclude mention of this statement.

The government states that defendant originally indicated that he would not bring up this comment. Also, Mebust has not objected to this motion. Therefore, the government's motion to preclude mention of vulgarity jokingly used in agent's report is granted since defendant has failed to provide a basis for the admission of this testimony.

### D. Mention of the ATF Assault

 The government moves to preclude defendant from informing the jury that the Bureau of Alcohol, Tobacco, and Firearms involved here is the same agency that was involved in the assault of the Davidian Compound in Waco, Texas. This motion is granted because the Waco incident appears quite irrelevant to this case and defendant has failed to provide a basis for admission of this testimony.

### Conclusion

Defendant's motion and amended motion for relief from prejudicial joinder are both denied. Defendant's motion to dismiss Counts Four and Six is denied. Defendant's motion to dismiss for vindictive prosecution is denied. Defendant's motion for production of agents' notes is denied, but the government should submit the agents' handwritten notes immediately for *in camera* review. Defendant's motion to dismiss superseding indictment is denied. Defendant's motion to bar the government's use of defendant's statement is taken under advisement pending the outcome of the hearing on this issue. Defendant's motion to bar the use of "other crimes or other acts" evidence is denied. Defendant's supplemental *Brady* motion is granted. Defendant's motion *in limine* to bar the use of tape-recorded conversations is granted.

The government's motion to reserve the right to introduce explosives is reserved. The government's motion to preclude cross-examination of agent on internal affairs investigation is granted. The government's motion to preclude mention of vulgarity jokingly used in agent's report is granted. The government's motion to preclude the mention of the ATF assault of the Davidian Compound in Waco, Texas is granted. The government's motion to admit statements of Steven Decker against defendant pursuant to Federal Rule of Evidence 801(d)(2)(D) is reserved pending the outcome of the hearing.