IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39882-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| EDWARD A. MARTINEZ, | ) | |
| | ) | |
| Appellant. | ) | |

MELNICK, J.P.T. [1] — A jury found Edward Martinez guilty of premeditated murder in the first degree, and the trial court sentenced him to 324 months of incarceration. Martinez appeals, claiming that the trial court erred by admitting his confession into evidence and that insufficient evidence existed to prove the element of premeditation. We affirm.

---

[1] Rich Melnick, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

FACTS

Haley Davis and Anthony Brines, a married couple, lived in Spokane, Washington. After a disagreement, Davis left to the Tri-Cities to be with family. While there, Davis downloaded a "dating app" and began communicating with Martinez. Less than one week later, Davis drove to Sacramento to reside with him.

Within a month, Davis and Martinez drove to Spokane to collect Davis's belongings. She left them at her marital residence, which Brines still occupied. Brines knew about the relationship between his wife and Martinez, but he still welcomed them into the residence. Also, Martinez knew Davis and Brines had not dissolved their marriage. Because Davis and Martinez did not have enough money to go back to Sacramento, they lived with Brines for almost three months.

One evening, after the three consumed alcohol and marijuana, at Martinez's suggestion, Davis and Brines agreed to have group sex. They went to the master bedroom. Martinez had difficulty participating and left. He said he needed to use the bathroom. When he returned, Martinez watched Davis and Brines. Davis then stopped engaging with Brines and approached Martinez. She wanted to get him involved. Davis thought something "seemed off," and everything came to a halt, after she heard

2

"maniacal laughing" by Martinez.  1 Rep. of Proc. (RP) (Apr. 18, 2023) at 382, 384,

447-48, 458.  Martinez then left the bedroom again.

He returned and sat on the end of the bed while Davis and Brines were both lying

diagonally across the middle of the bed.  Martinez suggested Davis change positions

so she would be facing toward the headboard on her hands and knees and Brines would

be on his knees behind her, also facing the same direction.  After rearranging them,

Martinez remained sitting on the end of the bed.  Shortly thereafter, Brines yelled

"ow, stop" and "[Martinez], stop, I have to go to the hospital."  1 RP (Apr. 18, 2023)

at 393-94.

Initially, Davis thought Martinez punched Brines, but she soon realized that

Martinez had repeatedly struck Brines with a knife.  Martinez stabbed Brines in the back

multiple times.  When Brines turned over, ostensibly to face Martinez and defend

himself, Martinez pushed Brines to the floor and stabbed him numerous times in the chest

and abdomen.  Davis immediately called 911. She then pushed her phone under the bed

so Martinez could not disconnect the 911 call.  Next, Martinez picked Davis  up by her

wrists and threw her on the bed.  He told her to get her belongings because they were

going to California.  Martinez said, "you never loved me did you" and "I f***ing killed

3

him." 1 RP (Apr. 18, 2023) at 398. When Davis refused to go with Martinez, he casually picked up his items, got dressed, and left.

At no time did Martinez attempt to help Brines or offer to call 911. The only weapons in the house were knives that were kept on the living room mantel above the fireplace.

Law enforcement arrested Martinez shortly after the stabbing. After being read his rights and waiving them, he confessed to murdering Brines with a knife. Martinez said that Davis came on to him and wanted to have sex with him in front of Brines. Because of his alcohol use, Martinez could not physically perform. *See* Ex. P5 at 16 min., 13 sec. to 16 min., 53 sec. Martinez further said that he was uncomfortable with the situation, especially after Brines began to touch him. *See* Ex. P5 at 16 min., 53 sec. to 17 min., 18 sec. He began to feel "a deep anger" inside that kept "building and building." Ex. P5 at 17 min., 18 sec. to 17 min., 25 sec. Martinez left the room. Upon returning, he saw Brines engaged with Davis, and Brines told him to join in. Ex. P5 at 18 min., 6 sec. to 18 min. 55 sec. Martinez admitted that it was at this moment, in the bedroom, that Martinez's "premeditation started" regarding the murder of Brines. Ex. P5 at 27 min., 15 sec. to 27 min. 30 sec.

4

Martinez thought for a moment and then decided he needed to find a knife. Ex. P5 at 17 min., 25 sec. to 17 min., 41 sec. He grabbed a knife from the living room, and went back to the bedroom. Ex. P5 at 19 min., 12 sec. to 20 min., 27 sec. He then had Davis and Brines turn around so that Brines's back was facing him. Martinez then began stabbing Brines. *See* Ex. P5 at 20 min., 27 sec. to 21 min., 39 sec. Next, he pushed Brines off the bed and finished the job by stabbing him in the chest. Ex. P5 at 22 min., 20 sec. to 22 min., 33 sec.

Brines had a total of twenty separate stab wounds—fourteen to the chest and abdomen, five to the back, and one to the right arm. 2 RP (Apr. 19, 2023) at 560. He suffered injuries to several organs, including both lungs, the liver, the spleen, and the large and small intestines.

In September 2020 the State charged Martinez with premeditated murder in the first degree.

*Confession hearing*

The State moved to admit the recorded statements Martinez made to law enforcement. Martinez objected and claimed he asked for an attorney and that his statements were coerced.

The trial court held a confession hearing pursuant to CrR 3.5. Detective Brian Cestnik of the Spokane Police Department, the lead investigator who interviewed Martinez, testified. The State also introduced a video recording of their conversation. At the conclusion of the hearing, the trial court entered the following written findings of fact and relevant conclusions of law:

FINDINGS OF FACT

1. The defendant, Edward Martinez, was contacted and detained by Spokane Police officers relating to a homicide investigation on August 13, 2020.

2. The defendant was transported to the police station where he was placed into an interview room, handcuffed to the floor by a chain.

3. The defendant was interviewed by Detective Brian Cestnik of the Spokane Police Department.

4. Prior to any questioning, Det. Cestnik advised the defendant of his constitutional rights, per Miranda, as provided for on a department issued constitutional rights card.

5. The defendant acknowledged his rights but invoked his right to an attorney at 0835 hours.

6. No questioning occurred, though Det. Cestnik informed the defendant that he would be booked into jail for first degree murder.

7. The defendant made a statement asking, "He's dead?" The detective confirmed that [Anthony Brines] had died and told the defendant "You killed him."

8. The detective also told the defendant that he could reach out to him by way of a kite if the defendant wished to speak with him about this incident.

9. As the detective was gathering his belongings to leave the room, the defendant reinitiated contact and stated that he would speak with the detective and that he did not need a lawyer.

10. Detective Cestnik again advised the defendant of his constitutional rights, per <u>Miranda</u>, as provided for on a department issued constitutional rights card.

11. The defendant again acknowledged his rights and waived his rights at this time. He agreed to provide a statement to the detective. This second set of rights were read and waived at 0838 hours.

From the foregoing Findings of Fact the Court now makes the following:

<u>CONCLUSIONS OF LAW</u>

. . . .

9. The defendant was not threatened, coerced, or made any promises.

10. The defendant voluntarily waived his rights, showed no confusion over his rights, and agreed to answer questions.

11. All statements made by the defendant to Detective Cestnik after the constitutional rights were read are admissible.

Clerk's Papers (CP) at 220-22.

The case proceeded to trial and the jury returned a verdict of guilty to the charge of premeditated murder in the first degree. Martinez appeals.

ANALYSIS

*Confession*

Martinez argues that the trial court erred by admitting his confession because it was not voluntary. Martinez challenges two conclusions of law that stated his waiver of rights was made voluntarily. Because the unchallenged findings of fact support the challenged conclusions of law, we disagree.

Unchallenged findings are verities on appeal. *State v. Rogers*, 146 Wn.2d 55, 61, 43 P.3d 1 (2002). We review the unchallenged findings to determine whether they support the conclusions of law. *State v. Brockob*, 159 Wn.2d 311, 343, 150 P.3d 59 (2006).

*Miranda*[2] warnings were developed to "protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004).

The admissibility of a confession obtained after the assertion of *Miranda* rights depends on whether the request was "'scrupulously honored.'" *State v. Boggs,* 16 Wn. App. 682, 686, 559 P.2d 11 (internal quotation marks omitted) (quoting *Michigan v.*

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Mosley,* 423 U.S. 96, 104, 96 S. Ct. 321, 46 L. Ed. 2d 321 (1975)), *review denied,* 88 Wn.2d 1017 (1977). A per se prohibition of any further interrogation, once an accused has asserted their right to counsel, has been rejected in Washington. Further questioning of a suspect is allowed provided the following conditions exist: (1) the right to cut off questioning was scrupulously honored, (2) the police engaged in no further words or actions amounting to interrogation before obtaining a waiver or assuring the presence of an attorney, (3) the police engaged in no tactics which tend to coerce the suspect, and (4) *the subsequent waiver was knowing and voluntary.  State v. Pierce,* 94 Wn.2d 345, 618 P.2d 62 (1980), *overruled in part on other grounds by Edwards v. Arizona,* 451 U.S. 477, 482, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (addressing whether law enforcement officers can recontact a defendant after that defendant has asserted his or her right to counsel).  *State v. Elkins*, 188 Wn. App. 386, 397-98, 353 P.3d 648, 654 (2015) (quoting *State v. Mason*, 31 Wn. App. 41, 44-45, 639 P.2d 800 (1982)).

A defendant may waive a previous exercise of their constitutional rights by their own voluntary and unsolicited actions without first having the *Miranda* warnings reread to them.  *State v. Boggs*, 16 Wn. App. 682, 687, 559 P.2d 11 (1977).  The test of voluntariness is whether "under the totality of the circumstances, the confession was coerced."  *State v. Broadaway*, 133 Wn.2d 118, 132, 942 P.2d 363 (1997).  In assessing

the totality of the circumstances, "a court must consider any promises or misrepresentations made by the interrogating officers." *Broadaway*, 133 Wn.2d at 132 (citing *United States v. Springs*, 17 F.3d 192, 194 (7th Cir. 1994)). "The court must determine whether there is a causal relationship between the promise and the confession. The inquiry is whether the Defendant's will was overborne." *Broadaway*, 133 Wn.2d at 132 (citation omitted). The State must prove the waiver of a *Miranda* right by a preponderance of the evidence. *State v. Wheeler,* 108 Wn.2d 230, 237-38, 737 P.2d 1005 (1987).

Martinez claims the trial court erred when it admitted his confession. Martinez first claims that the trial court erred in its conclusions of law 9 and 10, that "[Martinez] was not threatened, coerced, or made any promises" and that he "voluntarily waived his rights, showed no confusion over his rights, and agreed to answer questions." CP at 222. We disagree.

The unchallenged findings of fact are that Detective Cestnik did not ask Martinez any questions after he asserted his right to an attorney. The detective merely informed Martinez he would be booked into jail for murder in the first degree. CP at 221 (Finding of Fact 6). Martinez then asked, "'He's dead?'" CP at 221. Cestnik responded, in the affirmative and added, "'You killed him.'" CP at 221 (Finding of Fact 7). Cestnik told

10

Martinez that if he wanted to talk about the incident, he could send a kite. CP at 221 (Finding of Fact 8). "As [Cestnik] was gathering his belongings to leave the room, [Martinez] reinitiated contact and stated that he would speak with [Cestnik] and that he did not need a lawyer." CP at 221 (Finding of Fact 9). Cestnik then clarified Martinez's waiver of his right to an attorney, and reread him his *Miranda* rights. Martinez waived his rights and agreed to talk.

Martinez assigns error to both conclusions of law 9 and 10. He claims that Cestnik coerced Martinez to talk and that the waiver of his right to an attorney was not voluntary. The unchallenged findings of fact do not support Martinez's arguments. Rather, the challenged conclusions are supported by the unchallenged findings.[3] CP at 221.

*Premeditation*

Martinez claims insufficient evidence supports the element of premeditation. We disagree.

"The standard of review for determining the sufficiency of the evidence 'is whether, after viewing the evidence most favorable to the State, *any rational trier of fact*

---

[3] Martinez also challenges conclusion of law 11 that his statements are admissible at trial. Because the other challenged conclusions are supported by the unchallenged facts, this challenge also fails.

11

could have found the essential elements of [the crime] *beyond a reasonable doubt*.'"

*State v. Hampton*, 143 Wn.2d 789, 792, 24 P.3d 1035 (2001) (alteration in original)

(quoting *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality opinion)).

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "Circumstantial evidence is considered to be as reliable as direct evidence." *State v. Stewart*, 141 Wn. App. 791, 795, 174 P.3d 111 (2007). "'All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014) (plurality opinion) (quoting *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006)). Premeditation may be proved by circumstantial evidence where the inferences drawn by the jury are reasonable and the evidence supporting the jury's finding is substantial. *State v. Pirtle*, 127 Wn.2d 628, 643, 904 P.2d 245 (1995) (citing *State v. Gentry,* 125 Wn.2d 570, 597, 888 P.2d 1105 (1995)).

The trial court advised the jury that:

> "Instruction No. 10. Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose, and then it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed."

1 RP (Apr. 24, 2023) at 11 (quoting CP at 126).  This instruction is in accord with RCW 9A.32.020.

Premeditation, for purposes of murder in the first degree, is the deliberate formation of and reflection on the intent to take a human life and involves the mental process of thinking beforehand, deliberating on, or weighing the contemplated act for a period of time, however short.  *State v. Allen*, 159 Wn.2d 1, 7-8, 147 P.3d 581 (2006). Examples of evidence supporting a finding of premeditation include: motive, prior threats, multiple wounds inflicted or multiple shots, striking the victim from behind, generally the manner or method of killing, assault with numerous means or a weapon not readily available, and the planned presence of a weapon at the scene.  *State v. Hoffman*, 116 Wn.2d 51, 83, 804 P.2d 577 (1991); *State v. Bingham*, 105 Wn.2d 820, 827, 719 P.2d 109 (1986); *State v. Ryna Ra*, 144 Wn. App. 688, 703-04, 175 P.3d 609 (2008); *State v. Rehak*, 67 Wn. App. 157, 164, 834 P.2d 651 (1992).

In *State v. Ollens*, 107 Wn.2d 848, 733 P.2d 984 (1987), our Supreme Court affirmed the defendant's conviction for aggravated murder which included the element of premeditation.  Ollens stabbed the victim numerous times before slashing their throat. In the present case, Martinez stabbed the victim numerous times in the back, then threw him to the floor and stabbed him in the chest and abdomen.  In addition, similar to

13

*Ollens*, Martinez procured the weapon and brought it to the bedroom where he stabbed the victim.  Martinez had a motive to kill the victim.  Martinez confessed to premeditating the killing.

We conclude that after viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential element of premeditation beyond a reasonable doubt.

## CONCLUSION

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Melnick, J.P.T.

WE CONCUR:

_____
Fearing, J.

_____
Staab, A.C.J.