[No. 15805-8-I.   Division One.   September 15, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD
ERICH GIFFING, *Appellant*.

*Ronald Erich Giffing*, pro se, and *Eric J. Nielson* of
*Washington Appellate Defender Association*, for appellant.

*Seth R. Dawson, Prosecuting Attorney*, and *Michael
Downes* and *Seth Aaron Fine, Deputies*, for respondent.

PEKELIS, J.—Ronald Giffing appeals his conviction for the first degree murder of Lorraine Ruth Williams. He alleges that the trial court erred in admitting into evidence two gruesome pictures of Williams and in admitting testimony that Williams accused Giffing of stealing from her. He also alleges that there was insufficient evidence to show premeditation, and in a pro se supplemental brief, alleges numerous other errors. We affirm the conviction.

On July 12, 1984, at about 3 a.m. at a rest stop north of Marysville, the victim, later identified as Lorraine Ruth Williams, woke up a family asleep in a "semi" truck by knocking on the truck and screaming "Help me, help me." The husband heard her say the name "Ron Giffring, Giffing" or some similar name three times, and then "Ron Giffring's father killed me." His son testified that he heard the woman say "Rah" or "Ron did it to me"; while the wife only heard the victim say a name which started with the letter "R," she also heard her say, "I am dying. Look what they've done to me."

Another trucker, also awakened by Ms. Williams' cries, found a partially clothed woman, collapsed and bleeding. He phoned for help which arrived in the form of an aid car from the Snohomish County Fire Department. The medic described the victim as wearing only shoes, socks, a bra and a sweater, lying in a pool of blood, near death. She had a long, deep laceration from the middle of her neck extending up the right side of her neck, but he was unable to determine how the wound was inflicted. He transported her to Cascade Hospital where she died.

Dr. Haberman, a physician with extensive experience in pathology, performed the autopsy. He testified that Ms. Williams died of irreversible shock due to loss of blood and opined that the depth and the location of the laceration indicated the assailant had attacked Ms. Williams from behind, stabilized her body, then slit her neck with a single stroke using an extremely sharp instrument. He also testified that her blood alcohol level was .250.

Dr. Donald Reay, the King County Medical Examiner,

was called by the defense as an expert witness. He agreed with the medic that it was impossible to determine the position of the victim and the assailant when the wound was inflicted, but was certain that she had been wounded with a very sharp instrument. He did concede that the nature of the wound was consistent with Dr. Haberman's theory that the assailant attacked the victim from behind and dragged a very sharp instrument across her neck.

The police investigated the rest stop area and were able to track the trail of blood from where the victim had collapsed to a grassy area about 60 yards behind the rest stop. There the police discovered a pair of green pants, white underpants, two Country Club beer bottles, a bottle cap with a price tag on it, a Winston cigarette butt, a brown bag containing a receipt, and a yellow cup. There were also fresh tire marks, indicating that a vehicle had recently been there.

A fingerprint expert testified that one print found on the beer bottles matched Giffing's fingerprints while four others matched Ms. Williams' fingerprints. Saliva evidence indicated that the Winston cigarette could have been in Ms. Williams' mouth. Pubic hair found on the beer bottle was consistent with pubic hair taken from Giffing. In addition, a police detective testified that Giffing told him that his favorite kind of beer was Country Club which he usually purchased at one of two stores near his apartment. When the detective later bought a Country Club beer at one of these establishments, its price was $1.59, the same price as the price on the bottle found at the scene.

A Seattle police officer testified that on July 3, 1984, he related to Giffing that Ms. Williams had called the police to accuse him of stealing from her, and Giffing was then arrested on an outstanding traffic warrant. It was not until July 20, 1984, that Giffing was arrested for the murder of Ms. Williams. He denied any knowledge of her death and said that he had not seen her since July 3, 1984. The ledger kept at Giffing's apartment house confirmed that the last time Ms. Williams visited Giffing was on this date.

On July 23, Giffing was interrogated again. He informed the police that he and Ms. Williams had lived together off and on for approximately 2 years and that he was probably the father of her son. He stated that he liked to drink Country Club beer and he liked to drink it from a cup. He also informed the police that Ms. Williams smoked cigarettes, but he did not. Pursuant to a warrant, police searched Giffing's car and apartment and discovered a Winston cigarette butt, a cup, and human blood on both the car upholstery and a pair of Giffing's pants.

A church worker who was serving donuts and coffee at the Marysville rest stop on the night of the murder testified for the defense. She remembered serving two cups of coffee to an intoxicated "Indian" man carrying a long knife who handed a cup of coffee to a blond woman with whom he then walked off toward a grassy area. Giffing is Caucasian while Ms. Williams is a native American.

On appeal, Giffing first contends that the trial court abused its discretion in admitting two autopsy photographs of Ms. Williams' slit throat over defense objection. Giffing argues that under ER 403, any probative value of the photographs is far outweighed by their prejudicial effect.

Gruesome photographs may be admitted if their probative value outweighs their prejudicial effect. The decision to admit such photographs lies within the sound discretion of the trial court and will not be disturbed absent abuse of that discretion. *State v. Crenshaw,* 98 Wn.2d 789, 806, 659 P.2d 488 (1983). Photographs may be used to provide necessary details, especially where they shed light on material facts. *State v. Oughton,* 26 Wn. App. 74, 85, 612 P.2d 812 (1980).

The depth and nature of the wounds are material facts in the present case. The photographs were probative of premeditation as they supported Dr. Haberman's testimony that, in order to inflict such a wound, the assailant would have had to approach the victim from behind, stabilize her, and then use an extremely sharp instrument with great force. Thus, there was no abuse of discretion in admitting

the photographs.

Giffing next contends that the trial court abused its discretion under ER 403 and 404(b) when it admitted evidence that Ms. Williams reported an incident to the police involving Giffing's alleged theft from her. He contends that this evidence was irrelevant because he was subsequently only arrested for an unrelated traffic matter, not for theft, and that the prejudicial effect of this evidence outweighed any probative value.

Under ER 404(b), evidence of other crimes, wrongs or acts is not admissible to show a person acted in conformance with the character trait evidenced by that prior bad act. However, the trial court, in its discretion, may admit such evidence if it determines, first, that the evidence is logically relevant to and necessary to prove an essential ingredient of the crime charged, such as motive or intent. Next, the court must determine whether the probative value of the evidence outweighs its potential prejudice under ER 403. *State v. Saltarelli,* 98 Wn.2d 358, 362–63, 655 P.2d 697 (1982). Lastly, the court must properly limit the purpose for which the jury may consider the evidence. *State v. Gatalski,* 40 Wn. App. 601, 607–08, 699 P.2d 804 (1985).

The fact that the police had told Giffing about Ms. Williams' accusation was probative of a relevant issue, namely, his motive for killing the victim. The State's theory was that the motive for the murder was, at least in part, revenge for reporting the theft to the police. The trial court correctly analyzed the testimony under the first *Saltarelli* prong.

■ Next, the court considered the potential prejudicial effect of the testimony. After defense counsel argued his concerns, the court determined that the probative value of the evidence was not outweighed by any prejudice, and it admitted the evidence for its appropriate and limited purpose by submitting a cautionary jury instruction to that

effect.[1] The court did, as required, balance on the record the prejudicial effect of the evidence in light of its probative value. *State v. Jackson,* 102 Wn.2d 689, 693–94, 689 P.2d 76 (1984). The admission or refusal of evidence under ER 404(b) lies within the sound discretion of the trial court and will only be disturbed on appeal upon a showing of abuse of discretion. *State v. Anderson,* 41 Wn. App. 85, 100, 702 P.2d 481 (1985). Under the facts of this case, there was no abuse of the court's discretion.

■ Giffing next contends that there is insufficient evidence to support his conviction because there was no proof of premeditation, arguing that under *State v. Bingham,* 105 Wn.2d 820, 719 P.2d 109 (1986), killing with a knife cannot in itself support a verdict of premeditated murder. In reviewing the sufficiency of the evidence to support a guilty verdict in a criminal case, the appellate court views the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

Unchallenged instruction 6, which is the law of the case, *State v. Lanning,* 5 Wn. App. 426, 438, 487 P.2d 785 (1971), provides:

> Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

Because intent is rarely provable by direct evidence, evidence of premeditation may be inferred from all the circumstances surrounding the event. *State v. Gallo,* 20 Wn.

---

[1]The jury was instructed that the testimony "was admitted for the purpose of showing that a report of theft was made and for that reason, and may not be considered by you as evidence that any theft actually occurred."

App. 717, 729, 582 P.2d 558 (1978). In *Bingham,* the court held that under the facts presented there evidence of strangulation alone was not sufficient to support a determination of premeditation. Ample additional evidence, absent in *Bingham,* distinguishes the case sub judice. Giffing drove the victim a distance of some miles to an isolated spot in Marysville where he killed her. This has been held to be sufficient to support an inference of premeditation. *E.g., State v. Lanning, supra* (driving the victim to a lonely spot indicated premeditation); *State v. Luoma,* 88 Wn.2d 28, 33, 558 P.2d 756 (1977) (transporting the victim 5 miles supported a finding of premeditation), cited with favor in *Bingham,* at 824.

In addition, killing with a knife can be distinguished from strangulation which does not require the procurement of a weapon; indeed, the weapon is always at hand. Furthermore, the fact that Giffing used a knife that was sharpened to such an extent it was able to inflict an extremely deep wound in one stroke indicates preparation. Moreover, the jury could have found from the evidence that Giffing must have slit Ms. Williams' throat from behind after stabilizing her, indicating premeditation. Finally, the fact that Giffing and the victim had been intimate friends over a period of time and that some evidence of a possible motive was introduced creates a far different case than *Bingham* where the victim and defendant were strangers. In light of all the evidence, a rational trier of fact could have found beyond a reasonable doubt that Giffing murdered Ms. Williams with premeditation.

In a pro se supplemental brief, Giffing raises numerous other contentions. First, he claims that the evidence is insufficient to find him guilty of first degree murder. Pursuant to *Green,* we examine the evidence in the light most favorable to the State. *Green,* at 221. The overwhelming physical evidence found at the scene, the presence of human blood on Giffing's clothes and in his car, Ms. Williams' dying declaration, and the circumstantial evidence of premeditation inextricably connect Giffing with the pre-

meditated murder of Ms. Williams.

Many of Giffing's remaining contentions are not properly before us. He often fails to refer to the record in violation of RAP 10.3(a)(4), (5), fails to provide this court with the relevant record in violation of RAP 9.2(b), and makes factual assertions which are not in the record. Matters not supported by the record need not be considered on appeal. *State v. Briggins,* 11 Wn. App. 687, 692, 524 P.2d 496 (1974). In addition, Giffing often fails to cite authority to support his contentions in violation of RAP 10.3(a)(5). Contentions without support of authority need not be considered on appeal. *State v. Patterson,* 37 Wn. App. 275, 279, 679 P.2d 416, *review denied,* 103 Wn.2d 1005 (1984). A defendant proceeding pro se must comply with all applicable procedural rules. *State v. Smith,* 104 Wn.2d 497, 508, 707 P.2d 1306 (1985).

Nevertheless, a reading of the record before us demonstrates that there is no merit to his argument that he was denied effective assistance of counsel. Pursuant to *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, 2064 (1984), adopted in *State v. Jeffries,* 105 Wn.2d 398, 417–18, 717 P.2d 722 (1986), we see no indication either that his attorney failed to function as a counsel or that Giffing was prejudiced by his attorney's conduct. On the contrary, his attorney zealously represented him and showed skill in questioning witnesses, making objections and making opening and closing statements. *See State v. Tuttle,* 26 Wn. App. 382, 385, 612 P.2d 823 (1980); *State v. Wilson,* 29 Wn. App. 895, 904 (1981).

■ Giffing fails to appreciate that many of the actions complained of merely reflect tactical decisions. In considering claims of ineffective assistance of counsel, the courts have declined to find constitutional violations when the actions complained of pertain to the theory of the case or to trial tactics. *State v. Ermert,* 94 Wn.2d 839, 849, 621 P.2d 121 (1980). For example, the continuance granted at defense counsel's request and to which Giffing now assigns error, was just such a decision. Moreover, Giffing ascribes

no specific prejudice attributable to the 1–month continuance granted in order for his new attorney to prepare a defense.

■ Similarly, Giffing fails to establish that any of the instances he cites of alleged prosecutorial or judicial improprieties constitute misconduct as defined by any authority. Giffing's contention that his rights were violated when the police failed to pursue leads which might have led to exculpatory evidence is also without merit. Although the State does have a duty to preserve all evidence which would tend to exculpate the defendant, prosecutorial or police failure to pursue every witness or fruitless leads does not amount to suppression of exculpatory evidence. *State v. Koloske,* 100 Wn.2d 889, 900, 676 P.2d 456 (1984).

Giffing finally contends that the court erred in admitting the victim's statements as a dying declaration because there was no evidence she knew she was dying. The short time between her cries and her death and the nature of the dramatic wound she sustained give credence to Ms. Williams' own statement, "I am dying." There was no error. He also objects to the court's failure to give the dying declaration instruction offered by his counsel. Since he has failed to provide us with the proposed instruction refused by the trial court, we are unable to review this issue.[2]

Affirmed.

SCHOLFIELD, C.J., and WEBSTER, J., concur.

Review denied by Supreme Court December 2, 1986.

---

[2] We note, however, that the jury was cautioned by the court in instruction 13 as follows:

"Dying declarations have been admitted in evidence. This evidence should be carefully weighed in light of the surrounding facts and circumstances as the declarant has not been subject to cross–examination."