[No. 52740-7. En Banc. March 12, 1987.]

THE STATE OF WASHINGTON, *Appellant*, v. LAWRENCE C. OLLENS, *Respondent*.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for appellant.

*Michael R. Johnson* of *Department of Assigned Counsel,* for respondent.

GOODLOE, J.—This case involves a brutal killing inflicted by multiple stabs and slashes with a knife. We address whether, as a matter of law, there is sufficient evidence to allow the issue of premeditation to go to a jury. We answer in the affirmative.

Respondent Lawrence C. Ollens was charged with the crime of aggravated murder in the first degree for the November 9, 1985 robbery/stabbing death of William Tyler, a Tacoma taxicab driver. Before trial respondent moved that the trial court review and dismiss the aggravated first degree murder charge because of lack of evidence to prove the element of premeditation. The State acquiesced to pretrial review. Pretrial review on the element of premeditation took place in Superior Court on May 19 and 20, 1986.

The State relied on the testimony of Dr. Emmanuel Lacsina, the Pierce County Medical Examiner. Dr. Lacsina testified that Tyler died from multiple stab wounds and resulting blood loss. One stab perforated the left lung and the right ventricle of the heart. Dr. Lacsina indicated that this was one of the first wounds inflicted. A second stab perforated the right lobe of the liver and the soft tissues around the right kidney. A third stab entered between Tyler's ribs penetrating the right lobe of the liver. These wounds were not immediately fatal. However, all three wounds were potentially fatal if not treated shortly after their infliction. A fourth stab penetrated Tyler's right thigh.

In addition, Dr. Lacsina testified that Tyler's throat had been slit. More than one slashing motion was needed to complete the 6–inch gash which nearly transected the voice box and jugular vein. This injury was also capable of causing death. Dr. Lacsina testified, however, that Tyler could have been alive and struggling for 2 to 3 minutes after the neck wound.

Dr. Lacsina stated that the stab wounds preceded the

slashing of Tyler's throat. Dr. Lacsina also noted that there were numerous defensive wounds. These wounds were inflicted when the victim was alive and indicate that the assailant and victim struggled.

At the hearing, the defense asserted that the State's main witness, Lawrence Haney, would testify that Ollens supposedly admitted to him that he had killed the victim when the victim made a move as if to reach for a weapon and "[Ollens] cut the man because he felt it was either the man's life or his." Report of Proceedings, at 73.

Citing to *State v. Bingham,* 105 Wn.2d 820, 719 P.2d 109 (1986) and *Austin v. United States,* 382 F.2d 129 (D.C. Cir. 1967), the Superior Court removed the question of premeditation from the trial and entered an "Order Dismissing Element of Premeditation" and supporting "Findings of Fact and Conclusions of Law—Premeditation". The Superior Court concluded that the "use of a knife to inflict more than one wound, in and of itself, is not probative of premeditation, but . . . can only be probative of intent to kill". Clerk's Papers, at 42. The State appealed to this court seeking review as a matter of right pursuant to RAP 2.2(b)(1). Superior court proceedings have been stayed pending a further order of this court.

The issue we address is: Given multiple stab and slash wounds, is there sufficient evidence to send the question of premeditation to a jury?

Specific intent to kill and premeditation are not synonymous, but separate and distinct elements of the crime of first degree murder. *See* RCW 9A.32.030(1)(a), .050(1)(a); *State v. Brooks,* 97 Wn.2d 873, 876, 651 P.2d 217 (1982). Premeditation has been defined as "the deliberate formation of and reflection upon the intent to take a human life", *State v. Robtoy,* 98 Wn.2d 30, 43, 653 P.2d 284 (1982), and involves "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *Brooks,* at 876. Premeditation must involve more than a moment in point of time. RCW 9A.32-.020(1).

The State argues that *Bingham* is limited to its facts. In *Bingham,* we held that manual strangulation alone shows only an opportunity to deliberate and is insufficient to sustain the element of premeditation. *Bingham,* at 828. The State points out, however, that *Bingham* recognizes that "[t]he planned presence of a weapon necessary to facilitate a killing has been held to be adequate evidence to allow the issue of premeditation to go to the jury." *Bingham,* at 827; *State v. Tikka,* 8 Wn. App. 736, 742, 509 P.2d 101 (1973); *accord, State v. Giffing,* 45 Wn. App. 369, 725 P.2d 445 (1986); *see also State v. Griffith,* 91 Wn.2d 572, 577, 589 P.2d 799 (1979) (gun); *State v. Harris,* 62 Wn.2d 858, 868, 385 P.2d 18 (1963) (vacuum cleaner cord). *State v. Lanning,* 5 Wn. App. 426, 439, 487 P.2d 785 (1971), in which the victim's neck had been slashed, states:

> *Some premeditation was necessarily involved in order to have available a knife–edged, lethal instrument* capable of nearly severing the victim's neck.

(Italics ours.).

The State argues that Ollens necessarily planned the presence of a weapon, the double–edged knife used to inflict the fatal wounds. The State posits that the evidence suggests that Ollens carried such a knife in another robbery approximately 1 week earlier. The State concludes that the presence of a knife, as distinguished from no weapon, suffices to allow the issue of premeditation to go to a jury.

The State argues that as evidenced by the multiple stab wounds to the chest and heart, respondent intended to kill Tyler. It further argues that the multiple slashing of the victim's neck, which occurred after the stabbings, conclusively demonstrates a deliberation—however short—on the previously formed and demonstrated intent to kill. The State concludes that the physical evidence of manner and method of death, as a matter of law, sustains the element of premeditation.

Ollens disputes that the evidence in this case permits the inference that premeditation occurred. He argues that some time did pass during the struggle; however, this passage of

time is inherent in the manner of a multiple stabbing death and is mere passage of time, not evidence of premeditation.

Respondent also asserts that the manner of death, *i.e.*, violence and multiple wounds, does not support an inference of deliberation actually occurring or of a calmly calculated plan to kill which is requisite for premeditation and deliberation. *Austin v. United States*, 382 F.2d 129, 139 (D.C. Cir. 1967) provides:

> [V]iolence and multiple wounds, while more than ample to show an intent to kill, cannot standing alone support an inference of a calmly calculated plan to kill requisite for premeditation and deliberation, as contrasted with an impulsive and senseless, albeit sustained, frenzy.

*See also People v. Anderson*, 70 Cal. 2d 15, 447 P.2d 942, 73 Cal. Rptr. 550 (1968). Respondent argues that the evidence may indicate an intent to kill in the frenzy of the struggle, but it provides no basis from which a jury could infer that premeditation occurred.

Ollens argues that *Bingham* is not limited to manual strangulation, as *Bingham* emphasizes the application of its analysis to other methods of death.

> Having the opportunity to deliberate is not evidence the defendant did deliberate, which is necessary for a finding of premeditation. Otherwise, any form of killing which took more than a moment could result in a finding of premeditation, without some additional evidence showing reflection.

*Bingham*, at 826.

*Austin v. United States, supra,* which is quoted in *Bingham,* involved a homicide committed with a knife, wherein the victim was stabbed 26 times and the knife left embedded in the victim's skull. The *Austin* court held this evidence was insufficient to prove the elements of premeditation and deliberation, concluding that:

> [T]he Government was not able to show any motive for the crime or any prior threats or quarrels between appellant and deceased which might support an inference of premeditation and deliberation. Thus the jury could only speculate and surmise, without any basis in the testi-

mony or evidence, that appellant acted with premeditation and deliberation.

*Austin,* at 139. This is distinguished from the present case where a possible motive is present—that Ollens killed Tyler in order to effectuate the robbery. We also note that *Bingham* quotes *Austin* solely to caution against letting "[t]he facts of a savage murder generate a powerful drive . . . to crush the crime with the utmost condemnation available". *Bingham,* at 827–28. *Austin* was not quoted as part of *Bingham's* analysis on the issue of premeditation.

▋ The issue before this court is whether *Bingham* is controlling in this situation such that given the evidence no trier of fact could find premeditation beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). We hold that *Bingham* is distinguishable. First, manual strangulation involves one continuous act. In the case at hand, not only did Ollens stab the victim numerous times, he thereafter slashed the victim's throat. This subsequent slashing is an indication that respondent did premeditate on his already formed intent to kill. Second, a knife was used in the killing. The strangulation in *Bingham* did not involve the procurement of a weapon. *See Giffing,* at 375. Third, from the evidence a jury could find that Ollens struck Tyler from behind, a further indication of premeditation. *See Giffing,* at 375. Finally, as indicated above, a jury could find the presence of a motive and, therefore, it would not be left to speculate or surmise only as to the existence of premeditation.

We hold that there is sufficient evidence to submit to a jury the issue of whether Ollens not only intended to kill the victim, but also premeditated. It is properly the function of a jury to determine whether Ollens deliberated, formed and reflected upon the intent to take Tyler's life in order to effectuate the robbery.

We reverse the Superior Court's dismissal of the premeditation charge and remand for the continuation of pro-

ceedings consistent with this opinion.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, and DORE, JJ., concur.

CALLOW, J. (concurring)— I concur in the result. The majority, at page 851, states that "[t]he planned presence of a weapon necessary to facilitate a killing" is adequate evidence to allow the issue of premeditation to go to the jury. The majority poses the issue as being whether under the evidence no trier of fact could find premeditation beyond a reasonable doubt. The majority distinguishes *State v. Bingham,* 105 Wn.2d 820, 719 P.2d 109 (1986) by stating that (1) *Bingham* involved one continuous act while Ollens involves stabbings and a final throat slashing; (2) the strangulation used in *Bingham* did not involve the procurement of a weapon, while the stabbing in Ollens does; (3) the jury could have found that Ollens struck the defendant from behind as evidence of premeditation; and (4) the jury in Ollens could find a motive which would eliminate speculation as to the existence of premeditation. The majority then concludes that it is the function of the jury to determine whether Ollens "deliberated, formed and reflected upon the intent to take Tyler's life in order to effectuate the robbery." Majority, at 853.

> Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

WPIC 26.01.

When the four justifications for finding sufficient evidence for the issue of premeditation to go to the jury set forth in the majority are compared with *Bingham,* we find: (1) both attacks were prolonged, continued for an appreciable period of time and concluded with the death of the vic-

tim; (2) the absence of a weapon in *Bingham* is more than compensated for by the physical advantage of a man over a retarded female. I recognize that the procurement of a knife is a conscious act, but when a person habitually carries a knife as a tool this may not be evidence of premeditation, while, on the other hand, the physically powerful man who can kill a smaller woman at will without a weapon may well have premeditated. Is the evidence of the first fact evidence of premeditation and of the latter fact not for consideration by a jury on the question of premeditation? I submit the presence of the knife in the first situation might not prove premeditation, while evidence of a dominant, physically strong man with a motive to kill to silence a potential witness reflects a situation which could establish premeditation. I submit that in either situation the evaluation of the totality of the evidence in the light of all of the surrounding circumstances is for the jury. (3) The jury in Ollens, because it could have found that the defendant struck the victim from behind, is permitted to find that this was evidence of premeditation. The jury in *Bingham* had before it the conclusive evidence that the defendant had violently raped and then strangled his victim. This latter fact is surely as probative as speculation as to which stab wound was inflicted first and from what direction. (4) While the jury in Ollens is permitted to find a motive ("could find") to eliminate speculation as to premeditation, the jury in *Bingham* had before it as strong a reason to find a motive from the evidence as exists in this case.

I do not concur for the purpose of rehashing the result in *Bingham*; I concur to point out that no basis exists to make homicide by strangulation an isolated crime where premeditation cannot be proven. The majority's rationale forces this conclusion when only the defendant and the victim were present in a one–on–one situation, yet allows proof of premeditation in a one–on–one situation when a weapon is present. Sufficiency of the evidence of premeditation to allow the issue to go to the jury is present in this case, and I submit the evidence was sufficient to pass that test in the

*Bingham* circumstances.

The only question for this court is whether we can evaluate from the record the sufficiency of the evidence to take the question to the jury.

As stated by the court in both *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) and *State v. Bingham, supra* at 823, quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), the standard for reviewing the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt."

The decision of the majority in this case does not violate that standard of review, while the decision in *Bingham* does. A special area has been carved out and removed from jury consideration. This is a dangerous precedent and it is for this reason that I concur in the result.

ANDERSEN and DURHAM, JJ., concur with CALLOW, J.