# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75267-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER MALAGA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 27, 2017 |
| | ) | |

VERELLEN, C.J. — Christopher Malaga appeals his conviction of first degree murder with a firearm for the death of Adam Garcia. Malaga contends there was insufficient evidence of premeditation. The State presented evidence that Malaga had time between pulling the gun and shooting Garcia to deliberate on his decision, Malaga had motive, and Malaga brought a concealed gun to the scene. Because a rational jury could find him guilty of the crime charged beyond a reasonable doubt, there was sufficient evidence of premeditation.

For the first time on appeal, Malaga challenges the exclusion of certain evidence as an impermissible limitation of the scope of cross-examination under the confrontation clause. Because Malaga did not specifically object to the exclusions under the confrontation clause at the trial court, he has waived his right to confrontation. He may not raise this challenge for the first time on appeal.

Therefore, we affirm.

## FACTS

Between July 2014 and October 2014, Malaga kept his belongings and periodically slept in a shed at the home of Garcia's mother. Around midnight on October 17, 2014, Malaga called Bryce Hill and asked to stay at Hill's parent's house because "he got into an argument with the person he was staying with."[1] Hill agreed and Malaga moved his belongings to Hill's house.

An hour later, Garcia and Malaga had the following text message conversation:

| | |
|---|---|
| Garcia: | Yo |
| Malaga: | What |
| Garcia: | You |
| Garcia: | 1Mmmmm |
| Garcia: | Yo dude I just like men got into it with my baby mama before I got there I was already pissed been drinking my bad. |
| Garcia: | But the dude with the money so that he could take me back in town if you're still down to do that |
| Malaga: | I left with all my shit already . . . me and you got a problem now |
| Garcia: | Ok |
| Malaga: | You could never fuck and you gon' see that . . . I just had respect for your mom and your house . . . all of my shit out now let's see you talk that shit |

---

[1] Report of Proceedings (RP) (Mar. 11, 2016) at 995.

Garcia:    Oh I'm past it but I don't care. It's all up to you. Sorry
           for it to come down to this.

Malaga:    Hahahaha we gon see [2]

Around the same time, Garcia contacted Hill to purchase cocaine. They agreed to meet at a location in Oak Harbor. Malaga came to the location with Hill and Chris Knowles came to the location with Garcia.

After Garcia and Hill exchanged the cocaine and money, Hill and Knowles heard Malaga rack a gun. Malaga pulled the gun from his pocket, pointed it at Garcia, and the two men exchanged words. Knowles tried to get between the two men, and Malaga briefly pointed the gun at Knowles. Malaga and Garcia continued to argue, and Malaga shot Garcia in the face. Malaga and Hill fled to Hill's parent's house.

When police arrived at the scene, Knowles described the shooter as a "fat, short Asian male, mid-20s wearing a black hoodie."[3] Knowles also told police that he heard Garcia mention the name "Nico, Nick, or Nicholus" earlier in the evening. Detective Manuel Silveira identified Nicholus Vazquez from a database search for individuals with a name starting with N and height and weight matching Knowles' description. Later the same day, Knowles identified Vazquez in a photomontage because he "most resembled the guy I saw."[4] The following day, on October 19,

---

[2] Ex 79.

[3] RP (Mar. 10, 2016) at 690.

[4] RP (Mar. 14, 2016) at 1154-55.

Knowles received a Facebook message with a picture of Malaga. Knowles contacted the police and stated that the man in the picture was the shooter.

The State charged Malaga with first degree murder, second degree murder, and second degree assault.

Before trial, the court (1) excluded evidence of Hill's other bad acts, (2) limited inquiry into charging decisions concerning Hill, (3) excluded evidence of Vazquez's racial ancestry, and (4) excluded evidence of an anonymous tip to police concerning Vazquez.

The jury found Malaga guilty of first degree murder, second degree murder,[5] and second degree assault. The trial court sentenced Malaga to 443 months of total confinement.

Malaga appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

Malaga contends there was insufficient evidence of premeditation to sustain a conviction for first degree premeditated murder.

"'The sufficiency of the evidence is a question of constitutional law that we review de novo.'"[6] To determine whether there is sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the State and ask

---

[5] Vacated at sentencing.

[6] State v. Hummel, 196 Wn. App. 329, 352, 383 P.3d 592 (2016) (quoting State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[8]

To convict Malaga of first degree murder, the State had to prove beyond a reasonable doubt that Malaga acted with the premeditated intent to cause the death of Garcia.[9] Premeditation "must involve more than a moment in time."[10] "[M]ere opportunity to deliberate is not sufficient."[11] Premeditation is "'the deliberate formation of and reflection upon the intent to take a human life'" and involves "'the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.'"[12]

"Premeditation may be proved by circumstantial evidence where the inferences drawn by the jury are reasonable and the evidence supporting the jury's finding is substantial."[13] Motive, procurement of a weapon, stealth, and method of killing are "particularly relevant" factors in establishing premeditation,[14] but

---

[7] State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[8] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[9] RCW 9A.32.030(1)(a).

[10] RCW 9A.32.020(1).

[11] State v. Pirtle, 127 Wn.2d 628, 644, 904 P.2d 245 (1995) (quoting State v. Bingham, 105 Wn.2d 820, 827, 719 P.2d 109 (1986)).

[12] State v. Gentry, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1995) (quoting State v. Ollens, 107 Wn.2d 848, 850, 733 P.2d 984 (1987)).

[13] State v. Finch, 137 Wn.2d 792, 831, 975 P.2d 967 (1999) (citing Pirtle, 127 Wn.2d at 643; Gentry, 125 Wn.2d at 597).

[14] Pirtle, 127 Wn.2d at 644 (quoting State v. Ortiz, 119 Wn.2d 294, 312, 831 P.2d 1060 (1992)).

sufficient proof of premeditation does not require all four factors.[15] "[P]rocurement of a weapon and stealth 'can be further combined as evidence of planning.'"[16]

Malaga's repeatedly relies on a federal decision by the D.C. Circuit Court of Appeals,[17] but we find this nonbinding authority unpersuasive in light of well-developed Washington case law.

Here, when viewed in the light most favorable to the State, the evidence shows that Malaga had time to deliberate and weigh his decision to kill Garcia. Both Hill and Knowles testified that some time passed between Malaga pulling out the gun and shooting Garcia. During this time, Malaga and Garcia exchanged words, Knowles attempted to intervene, and Malaga briefly pointed the gun at Knowles.

In State v. Bingham, our Supreme Court emphasized that "[h]aving the opportunity to deliberate is not evidence the defendant did deliberate, which is necessary for a finding of premeditation."[18] In State v. Ollens, our Supreme Court distinguished Bingham and held opportunity to deliberate combined with evidence

---

[15] See Ortiz, 119 Wn.2d at 312-13 (sufficient evidence of premeditation without discussion of motive or stealth); State v. Sherrill, 145 Wn. App. 473, 485, 186 P.3d 1157 (2008) (sufficient evidence of premeditation despite lack of evidence of motive, procurement of a weapon, or stealth).

[16] Hummel, 196 Wn. App. at 355 (quoting Pirtle, 127 Wn.2d at 644).

[17] Austin v. United States, 382 F.2d 129, 127 U.S. App. D.C. 180 (1967) overruling recognized by U.S. v. Byfield, 928 F.2d 1163, 289 U.S. App. D.C. 71 (1991).

[18] 105 Wn.2d 820, 826, 719 P.2d 109 (1986).

of motive and procurement of a weapon is sufficient to submit premeditation to the jury.[19]

Here, there is evidence of premeditation beyond the mere opportunity to deliberate. The evidence shows Malaga had motive. In the text conversation between Malaga and Garcia, Malaga makes it clear that he is unhappy with Garcia when he states "me and you got a problem now."[20] Hill also testified that Malaga told him Garcia kicked Malaga off the property because they had a disagreement.

The evidence also shows Malaga brought a concealed gun to a drug deal to which he was not a party. Malaga contends the State must show the purpose behind procuring the weapon was to commit the murder. But "[t]he planned presence of a weapon necessary to facilitate a killing has been held to be adequate evidence to allow the issue of premeditation to go to the jury."[21] Hill testified that he did not know Malaga had a gun until he pulled it out and pointed it at Garcia. And Malaga did not pull out the gun until the deal between Garcia and Hill was completed.

Viewing the evidence in the light most favorable to the State, a rational jury could have found premeditation beyond a reasonable doubt. Accordingly, we conclude that the State presented sufficient evidence of premeditation to support Malaga's first degree murder conviction.

---

[19] 107 Wn.2d 848, 853, 733 P.2d 984 (1987).

[20] Ex. 79.

[21] Bingham, 105 Wn.2d at 827.

## II. Confrontation Clause

For the first time on appeal, Malaga challenges the exclusion of certain evidence as an impermissible limitation of the scope of cross-examination under the confrontation clause.

We review alleged violations of the confrontation clause de novo.[22] "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."[23] But in Melendez-Diaz v. Massachusetts, the United States Supreme Court acknowledged "[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections."[24]

In State v. O'Cain, this court analyzed Melendez-Diaz as it relates to a defendant's ability to raise a confrontation clause challenge for the first time on appeal.[25]

> [I]n Melendez-Diaz, the Supreme Court makes two things clear: (1) a defendant has the obligation to assert the right to confrontation at or before trial, in compliance with applicable trial court procedural rules, and (2) this obligation is part and parcel of the confrontation right itself, the parameters of which are based upon—and dependent upon—defendants being held to their obligation of timely assertion. In short, *the decision clearly establishes that, when a defendant's confrontation right is not timely asserted, it is lost.*[26]

---

[22] State v. O'Cain, 169 Wn. App. 228, 234 n.4, 279 P.3d 926 (2012).

[23] State v. Lee, 188 Wn.2d 473, 487, 396 P.3d 316 (2017) (emphasis omitted) (internal quotation marks omitted) (quoting Davis v. Alaska, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 39 L. Ed 2d 347 (1974)).

[24] 557 U.S. 305, 129 S. Ct. 2527, 2534 n.3, 174 L. Ed. 2d 314 (2009).

[25] 169 Wn. App. 228, 279 P.3d 926 (2012).

[26] Id. at 240 (emphasis added).

In O'Cain, the defendant raised a confrontation clause challenge to the admission of statements made by an absent witness. This court concluded, "Because [the defendant] did not assert his confrontation clause objection at or before trial, he cannot obtain appellate relief on that claim."[27]

Although our Supreme Court has never explicitly adopted this approach, the court has never indicated disagreement with the holding from O'Cain. In fact, each justice currently serving on our Supreme Court has either authored or joined opinions acknowledging the right to confrontation may be waived.[28]

In O'Cain, this court also recognized ER 103 is a rule the State is allowed to adopt governing the exercise of confrontation clause objections.[29] Pursuant to

---

[27] Id. at 232.

[28] State v. Slert, 186 Wn.2d 869, 876, n.3, 383 P.3d 466 (2016) (Justice Gonzalez authored a five-justice majority opinion, joined by Justices Madsen, Fairhurst, Wiggins, and Yu, in which the court listed various rights that may be waived without a full colloquy to assure the waiver is knowing, voluntary, and intelligent, including when the defendant "declines to confront one of the state's witnesses."); In re Adoption of M.S.M.-P., 184 Wn.2d 496, 500, 358 P.3d 1163 (2015) (Justice Gonzalez authored an eight-justice majority opinion, joined by Justices Madsen, Johnson, Owens, Fairhurst, Wiggins, McCloud, and Yu, in which the court analogized the waiver of the litigant's right to an opening hearing with other constitutional rights that may be waived through counsel, including the right to confrontation.) (citing Wilson v. Gray, 345 F.2d 282, 287-88 (9th Cir. 1965); State v. Lui, 179 Wn.2d 457, 527, 315 P.3d 493 (2014) (J. Stephens, dissenting) (Justice Stephens argued the State's burden under the confrontation clause was minimal because the defendant's confrontation right is conditioned on the defendant's timely objection.) (citing Melendez-Diaz, 557 U.S. at 327; State v. Schroeder, 164 Wn. App. 164, 167-68, 262 P.3d 1237 (2011)).

[29] O'Cain, 169 Wn. App. at 242-43 ("As noted in Melendez-Diaz, 'States may adopt procedural rules governing the exercise of such [confrontation clause] objections.' Washington's Evidence Rule (ER) 103 is one such rule.") (alteration in original) (internal citations omitted).

ER 103(a)(1), "Error may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike is made, stating the *specific ground of objection.*"[30] "A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial."[31]

Here, Malaga specifically contends the trial court erred when it (1) excluded evidence of Hill's other bad acts, (2) limited inquiry into the State's charging decisions concerning Hill, (3) excluded evidence of Vazquez's racial ancestry, and (4) excluded evidence of an anonymous tip to police concerning Vazquez. At trial, he did not object to the exclusion or limitation of the forgoing evidence on confrontation clause grounds. Instead, he relied on various evidentiary rules to argue in favor of admissibility. Because Malaga did not specifically object under the confrontation clause, he may not raise that challenge on appeal.

Additionally, as to the evidence of Vazquez's racial ancestry and the anonymous tip, such evidence would necessarily implicate an "other suspect" theory, but Malaga acknowledged at trial and during oral argument in this appeal that this evidence was not offered as other suspect evidence.[32] And notably, he did not show a "train of facts or circumstances" required to connect Vazquez to the

---

[30] (Emphasis added.)

[31] State v. Koepke, 47 Wn. App. 897, 911, 738 P.2d 295 (1987).

[32] RP (Mar. 1, 2016) at 63 ("we, the defense, aren't pointing a finger at Nico Vazquez").

crime.[33] The trial court did not abuse its discretion when it excluded such evidence.

Therefore, we affirm.

WE CONCUR:

---

[33] State v. Downs, 168 Wash. 664, 667, 13 P.2d 1 (1932).